Good morning, Mr. Ketchum. Good morning. May it please the Court, my name is Ty Ketchum, and I represent National Union Fire Insurance Company. We're segregated to the interests of Investment Centers of America, and we brought this lawsuit because Hometown Bank allowed Mark Henry to come into the bank and open an account doing business as Investment Centers of America. And in doing so, the bank, we allege, did absolutely nothing to verify that Mark Henry had the authority to do that on behalf of Investment Centers of America.  We're here today because the District Court granted a Rule 12 motion in favor of Hometown Bank, and I won't spend a lot of time on what the standard is because I'm sure you know that standard very well, but suffice it to say, the Court is to take all of the allegations that we've made as true and we get the broadest intendment with respect to a reading of our complaint and all reasonable inferences are to be drawn in our favor. And we think, based upon the facts that we've alleged in our complaint, that we have alleged the requisite facts to establish a plausible claim for relief here. We're making a negligence claim against Hometown Bank in connection with the opening of the account. The District Court found that there was no duty as a matter of law. The Court's ruling with respect to duty relates, I believe, as I interpret it, to two things. One is that the statute's rules, principles, and precedents don't support a duty under these factual circumstances. And then the other basis, the Court also analyzed the duty issue under the factors that exist in the State of Missouri for determining whether or not a duty should exist based upon public policy. We believe that we've alleged facts here to support the existence of a duty on the part of Hometown Bank to take reasonable precautions to make sure that when it opens an account on behalf of a company like Investment Centers of America, that it knows what Investment Centers of America is, that it makes sure, that it do something. It did absolutely nothing here. That it do something to make sure that Mark Henry has some connection to Investment Centers of America. What would that duty look like? Well, Your Honor, I believe it could take the form of a number of things. Some of the things that we've alleged in our petition, or in our complaint, is that the bank make an effort to ensure that Mark Henry actually was doing business as Investment Centers of America. And one way that they do that now is by contacting the Secretary of State in the State of Missouri and making sure that the individual has a fictitious name in the State of Missouri, which would provide an indication that this particular individual actually is, according to the State of Missouri, doing business as Investment Centers of America. Here, Mark Henry shows up on, I think, November 5, 2004, with a check for $100,000 made out to Investment Centers of America. And he says, I want to open an account so that I can cash or deposit this check. And the bank says, okay, can we see your ID? And he shows them his personal ID, and that's it. They have no information whatsoever that he has any connection to this investment brokerage firm that he's holding a check made out to in the amount of $100,000. Well, they're probably glad to get the money. What's that? The bank was probably happy to get the money. Well, and I think that goes to the issue of duty. When the bank is in a position like this where it's benefiting from the fact that money is being deposited in its accounts made out to an investment brokerage firm like Investment Centers of America, the bank ought to have a duty to do something to make sure that this individual actually does have authority to open the account. Did they have any knowledge that he worked there? Did he show an employee card or something? No, he did not. Who would the duty be to? The duty here, and this is a hot topic, I think, the duty here, the position we're taking is that the duty here did run to Investment Centers of America. Because they felt that they had a relationship with Investment Centers? That's our position. And if you're analyzing Missouri law with respect to when a court will acknowledge a duty, some of the things they look at is whether or not there's a relationship between the defendant and the plaintiff, and also whether or not there are special circumstances that exist that would warrant the imposition of a duty. And our argument, in part, is that when the bank allows Mark Henry to do this and then accepts checks made out to Investment Centers of America without doing anything at all to ascertain specifically what the connection between Mark Henry and Investment Centers of America was, they believed they had a relationship with Investment Centers of America, and therefore there is a relationship. So the duty arises because they allowed him to open the account and accepted checks at later dates, you mean? Well, the position that we're taking in this case is that the duty arose in connection with the opening of the account. Okay, so the check business is not relevant to the duty. It's anytime somebody comes into a bank and says they're opening an account and lists an affiliate, then the bank has a duty to the other party, even if it's a complete stranger. That's your rule? Well, I think that that's the rule for the facts in this case. That's our position. In this particular instance. What do you mean by that for the facts? How does it apply to the next case when John Doe comes in and says, I'm DBA Mom and Pop Grocery? Is there a duty to Mom and Pop Grocery? I think there is a duty. All right, so it's not just this. That's the rule. Any case where somebody comes in and says, I'm opening an account I'm affiliated with or doing business as a third party, you say there's a duty to that third party, even if it's a complete stranger to the bank. I just want to be clear on what the rule would be. Right. I believe that there is a duty in the State of Missouri for a bank to inquire with respect to whether or not the individual who comes in to open the account on behalf of the DBA or on behalf of another company actually has the authority to do that. And I would also submit that in connection with the specific facts that we've alleged in our complaint, the circumstance definitely demonstrates that a duty ought to exist here. Are there any states that have adopted the rule you're proposing? Because I think several have said, no, there's no duty to non-customers. There are, Your Honor, a lot of cases that hold that. Well, I know you featured that Alabama case, but the Alabama court itself came back later and arguably narrowed that to the facts. Yes, Your Honor. Yes, I think you're referring to the Patrick case. Yes. That is a case that we cite and we recognize. Is that your best case, or is there some other state that has given a more fulsome endorsement to your position? Well, we've cited other cases in the brief, Your Honor. There's a Torres case from Texas. A district court. Yes, there's a district court case where a similar situation existed. We cite the Patrick. Were those similar, though, or were those where people seems like one or two of those or maybe both the person came in using somebody else's identification? That's correct. In the Patrick case, the individual. Isn't that different than what we have here factually? I don't think so in terms of whether or not a duty exists. We've alleged very specific facts that relate to the opening of an account and what the bank did not do here and what the bank should have done here in order to ensure that this exact type of fraud didn't exist. And in the Patrick case, I agree with you that the facts aren't exactly the same. In the Patrick case, the court was dealing with an individual who had used the identity of another individual and that the plaintiff ended up spending some time in prison in connection with bad checks that were written by the imposter. This is a little bit different factually, but I think the general principle is the same. The bank has a duty under Missouri law, I believe, although the Dalton and Marbury case that we cite is not factually identical, we concede. But we believe that there's a duty of inquiry under these circumstances to make sure that the bank knows its customer. Another thing that we've cited to the court in our brief is a reference to the Bank Secrecy Act. Part of the reason why the district court granted the Rule 12 motion was because the court found that there were no statutes, precedents, rules, principles upon which the court could rely to find that there was a duty. And I believe that the Bank Secrecy Act does provide an example of a social consensus that these interests that we're trying to protect here need to be protected by the bank. Under the Bank Secrecy Act, a bank has a duty to make sure that it knows its customer. And the Bank Secrecy Act sets forth some minimum standards with respect to what needs to be done, but the Bank Secrecy Act also, as a general matter, requires the bank to know its customer. And here, Hometown Bank did not know its customer, and the reason why it didn't know its customer is because it didn't do anything to know anything about its customer. I think the harm here certainly was foreseeable. Anytime someone comes in and tries to open up an account when they don't have authority to do that, I think it can be assumed that the individual on behalf of whom the account is being opened is going to suffer damage. And I also don't think the magnitude of the burden that would be required upon the bank to make sure this type of thing doesn't happen. Actually, I don't believe that's the standard. To take reasonable precautions to try to prevent this from happening is not great. And, in fact, I think the Bank Secrecy Act requires them to do this, and it was enacted before the bank allowed this account to be opened. Well, what do you think your best case is? The best case, Your Honor, that deals with the opening of an account is the Patrick case out of Alabama. And we've also argued to the court that the Dalton and Marbury case from Missouri recognizes that there is a common law negligence claim that exists in connection with the breach of a duty to inquire as to whether an agent has the authority to do banking business on behalf of the employer. And so we believe that's an important case as well, and that cites to the Martin case in Missouri. I've used up the allotted time I was going to do in my first round, and so if there's no questions at this time, I'm going to sit down and save the final two minutes for my rebuttal. Thank you. Okay. Mr. Weber? Good morning, and may it please the Court, my name is Victor Weber, and my colleague Jim Baker is here with me, and I'm representing the Appley Hometown Bank. Before I get into the meat of this, I wanted to address one point that was made in the appellant's reply brief. First page of the brief, first footnote. They indicate that in our brief we appeared to have misapprehended their negligence claims, and that their claims of negligence in this case relate solely to the opening of the Mark Henry Doing Businesses Investment Centers of America account. I think this is important because that admission, I think, is a waiver of half of their negligence claims in this case, and the reason for that is the loss in this case was occasioned by Mark Henry's theft of the funds of four of ICA's customers, and he stole those funds in two different ways. One of the ways he sold them, and this is for customers MR1 and MR4, is Mark Henry, without the customer's authorization, opened a money market account in each of those customers' names at Investment Centers of America, and he put himself and his wife as joint account holders of those accounts. He then took those customers' funds and deposited it into those accounts. He then wrote checks from those accounts into his personal account at Hometown Bank, not his DBA account, his personal account, and then he spent the money on his personal business. Given the admission of the appellant regarding their claims of negligence, they don't have any theory or set of facts that would make any loss occasioned on account of the theft of MR1 and MR4's money my client's fault. There's no causal relationship whatsoever between the opening of the DBA account and their losses. So whatever the court does with the other legal arguments here, I'd ask that you affirm Judge Fenner's dismissal of the negligence and contributions claims as to MR1 and MR4 because they did not state a claim upon which relief can be landed as to them. This case was dismissed under Rule 12b because the court found that Hometown Bank N.A. did not owe a duty to Investment Centers of America or to its customers to check the Missouri Secretary of State's website to ascertain that Mark Henry had registered the fictitious name Investment Centers of America before permitting him to open the DBA account. Now, the general rule in Missouri is that there is no duty to protect anyone from a third party's criminal acts, and what Mark Henry did here was criminal. There's no dispute about that, and it was deliberate. There's an exception to that rule, however, where there's a special relationship between the injured party and the party for whom liability is sought. In this case, the argument the appellant makes is that because the fictitious name that the account was opened under contained the name Investment Centers of America, that the use of those words being identical to the corporation Investment Centers of America was sufficient to create some kind of special relationship. And in support of that, they cite the Patrick case from Alabama and the Torres case from Texas. And in those cases, what happened is an imposter opens an account. The imposter writes a bunch of bad checks. The prosecutor has a warrant issue to the purported account holder. The account holder gets arrested, suffers a bunch of injuries, and the account holders in those cases sued the banks. They said, hey, you were careless in opening my account. The Alabama and Texas courts went through a negligence analysis pretty much identical to Missouri's. And they said, well, you know, the special relationship exception applies here. You know why? Because the people who got hurt here were the people who you thought were your account holders. You have a duty to inquire, you know, when an account gets opened, who your account holder is. There's a special exception. You had a duty. You breached it. But those cases aren't this case. And I think the case that makes that clear is another Texas case we cited. That's the Guerra case. And in Guerra, it starts out the same way as Torres and Patrick. Imposter comes in, opens account, the name of a gentleman named Pedro Guerra. A whole bunch of bad checks get written out of the account. The prosecutor issues a warrant. Except this time, he didn't issue the warrant for the Pedro Guerra in whose name the account was opened. He issued it the name of a totally different Pedro Guerra. And so Mr. Guerra, totally innocent, gets arrested, has a whole bunch of trouble. He files a lawsuit against the bank. Goes up to the Texas Court of Appeals, and they say, hey, sorry, no special relationship. You weren't the bank's customer. The bank had a relationship with the Pedro Guerra, but that's not you. It's a different Pedro Guerra. And that's the case here. In Judge Finney's decision, he went through a couple of the factors that Missouri courts look at in deciding whether or not to create a duty. And among those was he mentioned the efficacy of the duty sought to be imposed on a party. And in the appellant's reply brief, I saw I think seven times they stated, as a matter of fact, that hometown bank thought that it had a relationship with Investment Centers of America. And, well, that was never pled. And, in fact, that's not true because a DBA account is not the same thing as a corporate business account. The account is owned. Every legal interest in it is held by Mark Henry. It simply denotes that he's doing business under the name Investment Centers of America. And it's a perfectly appropriate, common thing for people to do. Now, the point about, I think, Judge Finney's point about efficacy is, you know, the appellant's pointed out, it is easy as pie for hometown banks to go to the Secretary of State's website and see if Mark Henry has registered this name. It is. It takes two seconds. You type in the name. You don't have to pay anything. It's not like Delaware. You're written out. It's really simple. But what he doesn't point out is that it's also incredibly simple to register a fictitious name. That takes all of one minute and costs $7. In Missouri, as in most other states, people don't own business names. You can do business under any name you want. It's perfectly legal, proper, and appropriate for Mark Henry or anyone else to register the business name Investment Centers of America. Anybody can do it. And so I know the people at Hometown Bank. And what would have happened here if we had followed through with the duty the appellant proposes is the bank officer would have looked it up, said, hey, you know, Mr. Henry, you haven't registered the business name Investment Centers of America. You've got to do that before we can open the account. Do you want to use my computer? You can go ahead. He would have done it. There would have been a fictitious name registration. But that would have no tendency whatsoever to avoid the harm here. So if there was a duty, what could the bank do to confirm that this person had that authority? Well, forgive me, I don't know what the statute is. But it is unlawful in Missouri to do business under a fictitious name without registering the name. But any person can register any name at any time. So simply the act of saying, hey, I am going to do business under such and such name is sufficient to permit you to do it. You know, I'm doing business as Bob's Plumbing, for example. You're allowed to put out a sign that says Bob's Plumbing. Your customers write checks to Bob's Plumbing. And you can go set up a DBA account where you deposit checks payable to Bob's Plumbing. What if there's already a Bob's Plumbing? You're allowed to do that. Now, copyright, trademark, law, so forth might have something to say. So is your position there's really that even to impose a duty would be to impose no duty because it would be ineffective? There's nothing that you can do because anyone's allowed to use any name. And that was always implicit when we were filing. You know, we haven't made that argument in our pleadings. It's just when I saw seven separate times in this reply brief the statement of fact that we thought we were dealing with a particular corporation. That's not true. If you look at the registered names database at any state and you look up any sort of common company name, you'll see 20 or 30 companies with that name. That's fine, proper, and appropriate. People are allowed to have the same business name. I want to go to a second argument that we've made. This is an argument we've raised. The plaintiff filed four separate petitions in this case in response to their second amended petition. We've made an argument that the claims here are preempted by the Uniform Commercial Code. And Section 400-3.405 of Missouri statutes governs the bank's handling of instruments. And it provides that when an employer gives an employee authority to handle instruments and the employee fraudulently endorses them and steals the money, the default rule is that the employer has to bear the liability for that. Now, in the latter part of Section B, there's sort of an affirmative defense or a counterclaim where if the bank didn't exercise ordinary care and its failure to exercise ordinary care substantially contributed to the loss, then the bank has to bear the loss to the exact degree to which its breach of its duty of ordinary care occurred. That's this case. As a matter of fact, there's an example in Missouri statutes. It's case number three under Section 3-405 where an employee fraudulently opens a bank account in the name of its employer. And the employee forges the employer's name on a check and deposits it into the account. And what the statutory commentary says is the bank's not liable in that situation unless it failed to exercise ordinary care. And, you know, the appellant has and does contest application of this statute because they say, hey, there's no evidence whatsoever that Mark Henry had the authority from Investment Centers of America to handle instruments. Well, given the facts pled by the plaintiff, I think the only fair inference is that he did. What the plaintiff's complaint says is that Mark Henry was the only representative of Investment Centers of America in Carthage, Missouri, that he had an office storefront in Carthage, Missouri, and that he solicited an investment business from residents who lived around Carthage, Missouri. I think the only reasonable inference from those facts is that those people were supposed to give him checks. But even if the court wouldn't find that it's a fair inference from those facts, then there's another UCC statute that governs liability here, and that's UCC 3.4-20. And that statute actually creates a default rule that if a bank pays an instrument under a forged endorsement, which is what happens here, the bank is liable, period. Now, there's an affirmative defense where the payee of the instrument failed to exercise ordinary care, but the default rule is the bank's liable. Now, one of these statutes governs this case. The thing about these statutes is they're governed by the statute of limitation and 400.3. Sorry, I forgot the statute number. 400.3-118G, which creates a three-year statute of limitations. Of the four customers who suffered losses in this case, ICA settled with the last one of them more than three years before this case was filed. So this case is governed by the UCC, I think, and the statute of limitations is wrong. Under Missouri law, if a case is governed by the UCC and under the UCC there would be no liability, then any other claim under those facts is preempted. And I'm running low on time, but I'd like to address one thing, which goes to your line of questioning to Mr. Tyson regarding Investment Centers of America. And I think the implication is that my client had some awareness that it was a corporation or that he was an employee, and there's nothing in the record at all to indicate that. He had a small office where he worked alone in a storefront with a fairly generic name of a company called Investment Centers of America. They had no idea that he worked for anyone else. They had no idea that these were anyone else's checks. What did they ask for? What sort of identification or verification? Oh, his personal ID, his driver's license. Yeah, at the time that was customary, all they asked for when opening a DBA account. And as we point out, when he did open this DBA account, he'd been banking at Hometown Bank personally for six years. His office is just right down the street from the bank. I mean, he was in the Rotary Club, he was in the Duck Hunting Club, I know the bank president's in the Duck Hunting Club. They knew him. He was one of the guys from Carthage. So, you know, Mr. Ketchum talks about federal policy, knowing your customer. They knew their customer. They had no reason to think he was going to defraud anyone. This wasn't a foreseeable injury, and I think the bank acted reasonably. Unless the panel has any questions, I think that's all I have. Thank you. Thank you. You have a little over two minutes. Mr. Ketchum. Thanks, Your Honor. I'll just address a couple of the issues that Mr. Weber brought up. Judge, you asked him what are some of the things that the bank could have done. We've alleged those things in our complaint. They could have contacted the Secretary of State. Like he said, it would only take a couple of seconds. They could have contacted Investment Centers of America. That would only take a minute. They could have asked for a municipal business license to show that this guy actually was doing business as Investment Centers of America. It makes no sense at all to me that a bank ought to be allowed to open up an account on behalf of someone all it has is an ID, personal ID from, a sole proprietorship account doing business as an investment firm. To me, that just makes sense, and there ought to be a duty on behalf of a bank to do something to make sure that the person to take reasonable precautions to make sure that that person had the authority to do that, and Hometown Bank didn't do that here. I believe Mr. Weber talked a lot about facts that aren't in the pleadings. This is a Rule 12 motion. We are to be given all reasonable inferences. I don't believe the court is to infer anything in favor of the defendant at this stage. So with respect to what ICA or what Hometown Bank thought and who Hometown Bank thought it was dealing with, we get the benefit of those reasonable inferences, not the defendant. And then we've alleged a common law negligence claim that we submit is outside of the UCC and is not preempted by the UCC, and the district court agreed with us on that. That's an affirmative defense, and they haven't established any of the requisite facts to demonstrate that Mr. Henry had responsibility as that term is defined in the UCC. And in any event, what we've alleged is negligence associated with the opening of an account, and that is not specifically addressed by the UCC. Thank you. Thank you both for your arguments.